UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA B.,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/

Case No. 24-10481

Terrence G. Berg
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)

Plaintiff Victoria B. brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for child's insurance benefits under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 11), the Commissioner's cross-motion for summary judgment (ECF No. 13), and the administrative record (ECF No. 6).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

I.     DISCUSSION

A.     Background and Administrative History

Plaintiff alleges her disability began on June 30, 2012.  (ECF No. 6-1, PageID.34).  She reached age 22 on February 20, 2015.  (*Id.* at PageID.36).  She applied for child disability benefits on December 16, 2021.  (*Id.* at PageID.34).  In her disability report, she listed ailments which diminished her ability to work.  The ailments included: positional orthostatic tachycardia syndrome ("POTS"), chronic fatigue syndrome, severe migraines, upper body pain, temporomandibular joint issue, and delayed sleep phase syndrome.  (*Id.* at PageID.171).  Her application was denied on March 14, 2022.

Following the denial, Plaintiff requested a hearing.  On April 21, 2023, Administrative Law Judge ("ALJ") Anthony Smereka held a telephonic hearing, at which Plaintiff and a vocational expert testified.  (*Id.* at PageID.48-71).  On May 8, 2023, the ALJ issued an opinion which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.34-43).  Plaintiff later submitted a request for review of the hearing decision.  On December 28, 2023, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.17).  The ALJ's decision therefore became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 26, 2024.

### B.     Framework for Disability Determinations

A claimant may be entitled to child's disability benefits if she is at least 18 years old and has a disability that began before she turned 22 years old.  20 C.F.R. § 404.350(a)(5).  To qualify, the claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

To establish eligibility for child's disability benefits, the claimant must show: (1) that she "was disabled on or before [her] birthday (here, the twenty-second birthday); and (2) that such disability continue[d] to the date of the application."  *Miller v. Shalala*, 859 F. Supp. 297, 300 (S.D. Ohio 1994).  This evaluation considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) prior to age 22 has a severe impairment; (3) prior to age 22 has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not,

whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[1]

Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2012, the alleged onset date.  (ECF No. 6-1, PageID.36-37).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: POTS, celiac disease, irritable bowel syndrome, and chronic migraine without aura.  (*Id.* at PageID.37).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.*).  **Between Steps 3 and**

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

**4** of the sequential process, the ALJ evaluated Plaintiff's residual functional

capacity ("RFC")[2] and determined that, prior to attaining age 22, Plaintiff had the

RFC:

> to perform sedentary work . . . except avoid work at
> unprotected heights or around dangerous moving
> machinery; no climbing of any ladders, ropes, or
> scaffolds; the ability for occasional climbing of ramps or
> stairs; unlimited balancing; occasional stooping,
> kneeling, and crouching; no crawling; no driving in the
> course of employment; avoid concentrated exposure to
> dust, fumes, odors, humidity, or wetness and no exposure
> to temperature extremes; and no work requiring a fast
> production rate where the rate is set by others such
> as assembly line work.

(*Id.* at PageID.37-42). At **Step 4**, the ALJ determined that Plaintiff has no past

relevant work. (*Id.* at PageID.42). At **Step 5**, the ALJ found that there were jobs

that exist in significant number in the national economy that Plaintiff could have

performed, such as office clerk, packer, and bench assembler. (*Id.* at PageID.42-

43). The ALJ therefore concluded that Plaintiff had not been under a disability, as

defined in the Social Security Act, any time prior to February 19, 2015, the date

Plaintiff attained age 22.

### D.    Standard of Review

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant
can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a),
416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court

defers to that finding 'even if there is substantial evidence in the record that would

have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

This appeal is about the ALJ's consideration and treatment of a letter from

one of Plaintiff's medical providers, Dr. Jones.  Plaintiff began treatment for

dizziness and migraines in July 2012.  Among her symptoms during that time were

decreased energy and feeling tired.  (ECF No. 6-1, PageID.228).  Dr. Jones

suspected positional orthostatic tachycardia syndrome, or POTS.  POTS is a

disorder that causes lightheadedness or fainting when a person stands up from

sitting or lying down because the heart beats faster than normal.  *See*

https://www.ninds.nih.gov/health-information/disorders/postural-tachycardia-

syndrome-potsso (last visited January 13, 2025); https://perma.cc/2XBE-VPWL.
Plaintiff underwent a test which was positive for POTS. (*Id.* at PageID.229, 237).

Around the time of the diagnosis, Plaintiff was attending undergraduate classes. She had to reduce her courseload for a semester because of her POTS and migraine symptoms. (*Id.*). Her courseload returned to normal the next semester. During a July 2013 follow-up appointment, a physician notes that Plaintiff's medication and diet reduced Plaintiff's dizziness and nausea and increased her energy level. That said, at that time Plaintiff reported the need to sleep for eleven hours daily. (*Id.* at PageID.253). Plaintiff's POTS symptoms as well as fatigue and low energy continued with some fluctuation as documented in records up to January 2015. (*See, e.g.*, *id.* at PageID.260, 263, 269).

Dr. Jones wrote a letter describing Plaintiff's "disabling symptoms" on April 20, 2022. (*Id.* at PageID.1681). This is the letter that forms the basis of the appeal.

Dr. Jones wrote that Plaintiff "has been unable to work [since she was 19 years old] due to her symptoms." (*Id.*). She said that Plaintiff's conditions "have a profound impact" on daily life "and render her unable to work in any substantial way." (*Id.*). According to the letter, Plaintiff "consistently experiences severe fatigue which makes it difficult to complete daily tasks" and Plaintiff must sleep a minimum of 10 hours each night. (*Id.*). Dr. Jones wrote that Plaintiff has very little energy during the day and "regularly deals with debilitating migraine headaches

and widespread upper body pain." (*Id.*).  Because of POTS, Plaintiff's symptoms "are worsened and she generally feels unwell when she is in an upright position (sitting or standing)." (*Id.*).  Despite Plaintiff's master's degree in mathmatics, Dr. Jones opined that Plaintiff "is unable to work a regular job and support herself because of her health conditions and related symptoms." (*Id.*).

The ALJ summarized Dr. Jones's letter but noted that statements that an individual is disabled are neither valuable nor persuasive because they state a conclusion reserved for the Commissioner.  (*Id.* at PageID.41).  Because the ALJ did not attribute any persuasiveness to the letter, it appears that the ALJ did not treat the letter as a medical opinion.

Plaintiff brings two arguments: (1) Dr. Jones's letter is an opinion which the ALJ improperly considered and (2) even if the letter is not an opinion, the ALJ did not discuss all the limitations in the letter or explain why those limitations were not included in the RFC.  (ECF No. 11).

1.   Whether Dr. Jones's Letter is a Medical Opinion

Medical opinions are among the kinds of evidence that must be considered in determining a disability claim.  Under the applicable regulation, a "medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical and mental

9

demands of work activities.  20 C.F.R. § 404.1513(a)(2).  ALJs are required to

assess the persuasiveness of medical opinions.  20 C.F.R. § 404.1520c(b).  ALJs

are not required to analyze evidence that "is inherently neither valuable nor

persuasive to the issue of whether you are disabled[,]" such as whether the plaintiff

is disabled—that is a determination left to the Commissioner alone.  20 C.F.R. §

404.1520b(c)(3).

In the view of the undersigned, Dr. Jones's letter is not a medical opinion

that required a specific analysis from the ALJ.

Plaintiff does not contest that the portions of the letter stating that Plaintiff

was "unable to work" are "inherently neither valuable nor persuasive" because

they are conclusions reserved for the Commissioner to draw.  *See* 20 C.F.R. §

404.1520b(c)(3)(i).  So the ALJ was not required to consider these statements.

Plaintiff argues that what remains of the letter should constitute a medical

opinion; the undersigned disagrees.  Dr. Jones wrote that Plaintiff felt unwell and

had worsening POTS symptoms when in an upright (sitting or standing) position.

(ECF No. 6-1, PageID.1681).  She also wrote that Plaintiff must sleep for ten hours

a night and has an abnormally delayed sleep cycle.  (*Id.*).  But Dr. Jones "never

alluded to any particular abilities or restrictions that were imposed by Plaintiff's

impairments."  *Diggs v. Comm'r of Soc. Sec.*, 2024 WL 2278696, at *6 (E.D.

Tenn. May 20, 2024) (citation omitted).  "[F]ailure to specify any work activity

[plaintiff] could still do despite her impairments is reason enough to conclude that the information provided by Dr. [Jones] is not a medical opinion." *Harper v. Comm'r of Soc. Sec.*, 2022 WL 3028094, at \*2–3 (N.D. Ohio Aug. 1, 2022); *see also Kimberly Ann, J. v. Comm'r of Soc. Sec.*, 2024 WL 1699496, at \*7 (E.D. Mich. Mar. 7, 2024) ("Judgments about the nature and severity of a claimant's impairments, medical history, diagnoses, treatment prescribed with response, and prognoses are all considered 'other medical evidence' and not medical opinions."). Because Dr. Jones neither specified what Plaintiff could still do nor provided any work-related limitations, the letter is not a medical opinion under the regulations, so the ALJ was not required to assess its persuasiveness.

Plaintiff posits that we can infer medical opinion from the letter. Aside from the letter, Plaintiff points to her testimony that she could not perform sedentary work because she could not be in an upright position for six hours a day. (ECF No. 11, PageID.1702). According to Plaintiff, from the letter and her testimony we can infer that Plaintiff "would be unable to begin her workday until later in the day" due to needing ten hours of sleep and her abnormally delayed sleep cycle. We can also infer her inability to tolerate being in an upright position for a full day without breaks. (*Id.* at PageID.1703).

This argument is not well taken. First, the undersigned is not convinced that ALJs are permitted to "infer" medical opinion from other medical evidence. The

Sixth Circuit cautioned that the "term 'medical opinion' cannot be understood to encompass every piece of information that describes 'what [a claimant] can still do' only after manipulation and interpretation with supplemental evidence." *Robinson v. Comm'r of Soc. Sec.*, 2022 WL 17168444, at *3 (6th Cir. Nov. 22, 2022). Plaintiff asks the Court to infer opinion from the letter along with her testimony as supplemental evidence. But "[t]o do so would collapse the distinction between 'medical opinions' on one hand, and 'laboratory findings' and 'clinical findings' on the other—the latter two of which need not be assessed, even if they could be interpreted as providing insight on work activities." *Id.*

Still, the merits of the argument are lacking. Plaintiff cites *Gregory R. v. Comm'r of Soc. Sec.*, 2022 WL 780240 (S.D. Ohio Mar. 15, 2022), to support inferring opinions from Dr. Jones's letter. But *Gregory R.* is different. There, the doctor said the plaintiff could not respond appropriately to criticism for more than 50 percent of the workday. This statement is not a medical opinion, but from that statement one could infer the inverse—that the plaintiff could appropriately respond for less than 50 percent of the workday, which would constitute a medical opinion. *Id.* at *5. Dr. Jones's letter is not the same. We cannot simply infer the opposite of a limitation in the letter because Dr. Jones provided no work-related limitations. It is not reasonable to infer that Plaintiff could not begin a workday until later in the day just because Dr. Jones wrote that Plaintiff must sleep at least

ten hours "each night" and has a delayed sleep cycle. Where in *Gregory R.* the Court could simply look to the inverse of the doctor's statement and easily find a medical opinion, the same is not true here.

The letter is, therefore, "other medical evidence" which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed response, or prognosis." 20 C.F.R. § 404.1513(a)(3). While the regulations impose a duty on the ALJ to articulate how medical opinions were considered, *see* 20 C.F.R. § 404.1520c, there is no such duty with respect to other medical evidence. *See Gabel v. Kijakazi*, 2022 WL 2349716, at *8 (E.D. Tenn. June 29, 2022). As far as the basic articulation requirement is concerned, the undersigned sees no error—the ALJ discussed and considered Dr. Jones's letter.

2.     Consideration of the "Other Medical Evidence"

This brings us to Plaintiff's second, alternative argument for remand. She argues that the ALJ failed to create an accurate and logical bridge between the evidence as described in Dr. Jones's letter and the RFC. She says that the ALJ did not explain how the RFC for sedentary work accounts for her sitting limitations and did not take into account that her POTS symptoms are worse in the morning. (ECF No. 11, PageID.1705-08).

A thread running through much of Plaintiff's argument is the assertion that the ALJ said he incorporated Dr. Jones's findings into the RFC, yet the RFC does not account for those findings.  (*See, e.g.*, *id.* at PageID.1706; ECF No. 14, PageID.1730-31).  It appears that Plaintiff misinterprets the ALJ's decision.  After describing Dr. Jones's letter, the ALJ wrote: "I have fully considered Dr. Jones' statements and her description of the claimant's symptoms and response to treatment efforts.  The claimant's impairments have been thoroughly accounted for in her residual functional capacity as articulated above."  (ECF No. 6-1, PageID.41).  This is not a statement that the ALJ was accounting for the impairments in Dr. Jones's letter.  Rather, read in context, the second quoted sentence makes no connection to the preceding sentence such that suggests the ALJ was incorporating Dr. Jones's statements into the RFC.  Because the ALJ said "the claimant's impairments have been fully accounted for," instead of "Dr. Jones's statements have been fully accounted for," the best interpretation is that the ALJ considered Dr. Jones's statements and crafted an RFC that accounts for Plaintiff's impairments based on the evidence the ALJ discussed throughout the decision.  Thus, Plaintiff's argument that the RFC is confusing because it does not account for Dr. Jones's statements is unavailing and will not be addressed further.

What is left is the contention that the ALJ did not accurately and logically connect the RFC limitations with the evidence.  Plaintiff largely points to her

purported inability to sit for six hours in a workday, asserting that the RFC does

not account for her sitting limitation.  She relies in part on her testimony about her

POTS symptoms while seated.  (ECF No. 11, PageID.1705-06; ECF No. 14,

PageID.1732-33).  But the ALJ found Plaintiff's subjective statements "not

entirely consistent with the medical evidence."  (ECF No. 6-1, PageID.38).

Plaintiff does not challenge that determination.

The ALJ addressed Plaintiff's ability to sit or stand given the POTS

diagnosis.  Some notable findings from the ALJ include that Plaintiff would

structure school study times around her symptoms, that her POTS symptoms of

lightheadedness were mostly "ignorable, tolerable," and that she always felt tired.

(*Id.* at PageID.39) (record citation omitted).  From August through November

2014, Plaintiff reported mild symptoms that "only partly limited her."  (*Id.*).  In the

last medical record before Plaintiff attained age 22, Plaintiff reported fluctuating

symptoms that were worse in the two weeks prior but she was still able to go to the

gym for half an hour to walk and run laps.  (*Id.* at PageID.40).  Finally, the ALJ

noted that despite reported dizziness or lightheadedness in a seated position,

Plaintiff never experienced a syncopal episode.  (*Id.* at PageID.42).

The ALJ concluded that Plaintiff's fluctuating but ever-present symptoms

supported a finding that Plaintiff's impairments caused some limitation in her

ability to perform work activities, but "the evidence as a whole is not consistent

with a finding that they disabled her from all work activity." (*Id.* at PageID.40). To support this conclusion, the ALJ pointed to Plaintiff's ability to maintain a full courseload with good academic performance. The ALJ acknowledged that she structured her class schedule and studying around her symptoms, but contrasted this with Plaintiff's ability to consistently pursue and complete her degree, which suggested she was not disabled from performing sedentary work. The ALJ also noted that Plaintiff could engage in other activities—bike riding, shopping at the mall for several hours, attending a concert where she stood for three hours, going to the gym to walk and run laps, and helping a neighbor with yardwork—which combined with coursework "further tend to support the conclusion that her symptoms were not as severe or as debilitating as she claims." (*Id.*).

The ALJ also addressed the opinions from state agency medical consultants. They opined that Plaintiff could perform light work with additional restrictions. The ALJ largely agreed with the opinions except that he concluded that Plaintiff had no restriction in balancing and, more importantly, that she was further restricted overall to sedentary work to account for fatigue, dizziness, and other symptoms. (*Id.* at PageID.41-42). These opinions lend further support to the RFC.

Plaintiff argues that her activities do not equate to the ability to sit for a long time. She notes that the ALJ did not appreciate the context of her walking in the mall or standing at a concert—those activities were in the evening when her POTS

symptoms are lessened.  (ECF No. 11, PageID.1708).  These arguments do not require remand.  There is nothing inappropriate or inaccurate about the ALJ's discussion of Plaintiff activities.  Considering the physically demanding and long-lasting nature of those activities, the ALJ did not err in pointing to them as evidence that Plaintiff is not as limited as she suggests.  It is not unreasonable to suggest that a person who can ride a bike and run, shop for hours, attend a concert, and successfully complete undergraduate coursework is not disabled because of dizziness from sitting or standing.  The assertion that the ALJ did not consider that Plaintiff's symptoms are better at night is also unavailing.  Even if Plaintiff could only succeed at jobs that started later in the day, Plaintiff cited no authority showing that such a limitation is disabling nor did she ask the vocational expert whether working later in the day significantly reduces the number of available jobs.  (*See* ECF No. 6-1, PageID.69).  She provided no persuasive argument or authority that her timing is a disabling factor.

Plaintiff argues that the lack of syncopal episodes while seating also does not equate to a finding that she could sit and remain on-task for an eight-hour workday.  (ECF No. 14, PageID.1731).  The opposite could also be true—experiencing dizziness or lightheadedness during some of the seated day does not equate to a finding of disability.  As explained above, Plaintiff has the burden of

proving that she is disabled.  *Walters*, 127 F.3d at 529.  Raising the possibility of disability is not enough.

Having found Plaintiff's subjective statements inconsistent with the record, the ALJ was left with treatment notes (which contained more subjective statements), the two state agency medical opinions finding Plaintiff less limited than the ALJ, and Dr. Jones's "other medical evidence" letter.  The ALJ discussion of the medical evidence, Plaintiff's activities, and her undergraduate work and success provide a logical and substantially supported bridge between the evidence and the RFC limiting Plaintiff to sedentary work.  Because substantial evidence supports the decision, it should be affirmed, even if substantial evidence supports the opposite conclusion.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner of Social Security's decision.

## II.   PROCEDURE ON OBJECTIONS

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: March 3, 2025
                                    <u>s/Curtis Ivy, Jr.</u>
                                    Curtis Ivy, Jr.
                                    United States Magistrate Judge